United States District Court
Southern District of Texas
**ENTERED**
August 30, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALLAN LASLEY, et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| V. § | CIVIL ACTION NO. 18-0347 |
| § | |
| ACADEMY, LTD., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court in this case that has been referred to the undersigned Magistrate Judge for all pretrial proceedings is Defendant Academy, Ltd.'s Motion for Summary Judgment on Plaintiff Dustin Trainer's Claims (Document No. 66), and Defendant Academy, Ltd.'s Motion for Summary Judgment on Plaintiff Rusty Robbins's Claims (Document No. 72). In those two Motions for Summary Judgment, Defendant Academy, Ltd. argues that there is no genuine issue of material fact as to whether Plaintiff Trainer and Plaintiff Robbins were "exempt" from the overtime provisions of the Fair Labor Standards Act ("FLSA") as executive employees. Having considered those motions, the responses, Academy's replies, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment on Plaintiff Dustin Trainer's Claims (Document No. 66) be GRANTED and Defendant's Motion for Summary Judgment on Rusty Robbins' Claims (Document No. 72) be DENIED.

I.  **Background**

Plaintiffs Rusty Robbins and Dustin Trainer, on behalf of themselves and all other similarly situated, bring the instant action, alleging that Defendant, Academy, Ltd. ("Academy") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* by failing to properly compensate them, and those similarly situated, for the overtime they worked and by improperly classifying them as exempt executive employees. Robbins and Trainer allege that while they were salaried employees for Academy and given the title of assistant managers, they "spent the vast majority of their time performing the same duties as non-exempt employees," including "customer service, making sales, receiving and processing shipments, merchandising and placing products on the sales floor based on directions (planograms) from [Academy]." Plaintiffs' Amended Collective Action Complaint (Document No. 32 at 2).

As is not disputed, Robbins was a "operations manager" at an Academy store in North Richland Hills, Texas, from April 2017 to June 2017; Trainer was a "logistics manager" at an Academy store in Gainesville, Georgia, from June 2015 to January 2016. Academy's operations managers, logistics managers, "hardlines' managers and softlines managers are considered "assistant managers" at Academy stores, and are answerable to their respective "Store Directors." Academy's retails stores are all generally staffed the same way, with a Store Director at the top, several assistant managers, including an operations manager, a logistics manager, a hardlines manager, and a softlines manager underneath the Store Director, and each assistant manager having a senior team leader, team leaders, and associates for their respective teams. The Store Director and assistant managers are all paid a salary, while the other employees are paid hourly. Whether Robbins and Trainer, and those on whose behalf they have brought this FLSA overtime case, have been properly classified as exempt

2

employees for purposes of overtime is both the basis of this case and Academy's Motions for Summary Judgment.

Academy argues in those two Motions for Summary Judgment that the primary duties of Robbins and Trainer as assistant managers was managerial in nature, and that they, as assistant managers, regularly and customarily directed the work of two or more employees. Robbins and Trainer, in response, maintain that they were nothing more than salaried employees, who took all their direction from the Store Directors, and whose duties and responsibilities were not significantly or appreciably different from the responsibilities and duties of Academy's hourly employees. The Motions for Summary Judgment are ripe for ruling, Plaintiffs having been afforded significant, additional time to conduct discovery prior to having to file their responses.

## II.  Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The substantive law governing the claim at issue determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most

favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *see Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial. *See Celotex*, 477 U.S. at 324. In ruling on summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

### III. Discussion

The FLSA requires employers to pay time and a half for each hour that an employee works in excess of 40 hours per week, 29 U.S.C. § 207(a), and creates a cause of action for employees against employers that violate these requirements. 29 U.S.C. § 216(b). "An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). If the plaintiff establishes a prima-facie claim, the burden shifts to the defendant to either establish that he is exempt from the FLSA's requirements, or otherwise come forward with evidence

disproving the plaintiff's alleged damages. *Id.*

Certain classes of employees are exempt from overtime coverage under the FLSA. *See Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 352 (5th Cir. 2015)("Certain employees, however, are exempt from the overtime requirements [of the FLSA]."). Exemptions are defined by the Secretary of Labor in 29 C.F.R. § 541.0 *et. seq.*, and include workers who are employed in a bona fide executive or administrative capacity. *See* 29 U.S.C. § 213(a)(1)(exempting from § 207 "any employee employed in a bona fide executive, administrative, or professional capacity. . ."). The Department of Labor ("DOL") regulations define a "bona fide executive" employee as an employee:

> (1) Who is compensated on a salary basis at a rate of not less than $455 per week;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100 (2016).

"The executive exemption is conjunctive and accordingly, the employer who claims the exemption must meet each element for the exemption to apply." *Mohnacky v. FTS Intern. Servs., LLC*, No. 13-CV-246, 2014 WL 4967097, at *3 (W.D.Tex. Oct. 2, 2014).

The employer bears the burden to establish the applicability of an exemption under the FLSA. *Chatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006). The question of how an employee

spends his time working is a question of fact; but whether an employee's salary and duties ultimately satisfy an exemption is a question of law. *Zannikos*, 605 F. Appx at 352 (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). The FLSA's exemptions must be given a "fair reading" rather than being construed narrowly against the employer. *Encino Motorcars v. Navarro*, ___U.S.___, 138 S.Ct. 1134, 1142 (2018); *Carley v. Crest Pumping Technologies, LLC*, 890 F.3d 575, 579 (5th Cir. 2018).

Here, there is no dispute about the first prong of the exemption – that Robbins and Trainer were both compensated on a salary basis of more that $455 per week. As for the second prong – whether Robbins' and Trainer's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof" – the parties do dispute what Robbins' and Trainer's primary duties were, with Academy arguing that their primary duties were managerial – managing employees and the stores and departments in which they worked – and Robbins and Trainer arguing that their primary duty was "customer service," a duty that is not inherently or necessarily managerial. With respect to the third prong – whether Robbins and Trainer "customarily and regularly direct[ed] the work of two or more other employees – there is also a dispute, with Academy arguing that Robbins and Trainer had numerous employees under their supervision and on their "teams," and also effectively supervised all the employees in the store in which they worked when they were the closing managers on duty, and Robbins and Trainer arguing, in contrast, that they didn't customarily and regularly "direct" the work of any other employees, and that they worked side-by-side with the members of their "team" doing the exact same work, and that any direction of their work and the work of those on their team came from their respective Store Directors. As for the fourth and final prong – whether Robbins and Trainer had "the

authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight" – again there is an argument-based dispute between the parties, with Academy arguing that Robbins and Trainer both had the authority to hire and discipline employees on their teams, and Robbins and Trainer arguing that they did not have that authority.

A review of the summary judgment evidence reveals a genuine issue of material fact on prong two of the executive exemption as it relates to Plaintiff Robbins. There is, however, no genuine issue of material fact on any prong of the executive exemption as it relates to Plaintiff Trainer.

Prong two is dependent upon two determinations: (1) what Robbins' and Trainer's "primary" duty was; and (2) whether their primary duties can be considered "management of the enterprise" or a "customarily recognized department or subdivision thereof." The fact that an employee has a title of "manager" is "insufficient to establish the exempt status of an employee." 29 C.F.R. § 541.2. Instead, whether an employee falls within the executive exemption is dependent upon what the employee's duties are.

The term "primary duty" in the executive exemption means the "principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). According to the Department of Labor's regulations, which courts are to defer to in determining whether an exemption applies, *Vela v. City of Houston*, 276 F.3d 659, 667 (5th Cir. 2001), explain, as follows, how an employee's primary duty is determined:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee

7

> include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). The regulations also provide guidance on how the amount of time spent by an employee on non-managerial tasks has bearing on the determination of an employee's primary duty:

> The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.7000(b). Finally, the regulations provide specific guidance for this case, in which Robbins and Trainer were assistant managers in Academy's retail stores:

> assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700(c). At bottom, however, "the employee's primary duty will usually be what []he does that is of principal value to the employer, not the collateral tasks that []he may also perform, even if they consume more than half h[is] time." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990).

The regulations also provide guidance about what tasks can constitute the "management of

an enterprise." Such tasks generally include, but are not limited to, "activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102.

Here, the summary judgment evidence Academy primarily relies on in its Motions for Summary Judgment includes the job descriptions for operations and logistics managers (Document Nos. 66-2 at 7-14; 72-1 at 8-10 ), the deposition testimony of Kelly Pontigo, Academy's Senior Director of Stores - Human Resources, that the primary duty of Academy store managers is "the overall management responsibility for the department in which they support as well as the entire store" (Document No. 66-1 at 71; 72-1 at 65), and the Declarations of various other assistant managers, who state that they spent 90-100% of their time on managerial tasks and responsibilities. *See* Declaration of Andrew Lovingood (Document No. 66-3 at 4-5); Declaration of David Graham (Document No. 66-3 at 13); Declaration of Matthew Brooks (Document No. 66-3 at 19); Declaration of James Morrison (Document No. 66-3 at 25); Declaration of Whitney Smith (Document Nos. 72-1 at 78); Declaration of Travis Smith (Document No. 72-1 at 83-86); Declaration of Kanetha Smith

(Document No. 72-1 at 89). Academy also relies upon, to a somewhat lesser extent, on the deposition testimony of Robbins and Trainer that they considered job applicants and conducted interviews, made recommendations about employee hiring and discipline, provided some training members of their team, were involved in work scheduling, and were responsible, particularly when they were the "manager on duty," for the overall running of the store. Trainer Deposition (Document No. 28, 41, 56); Robbins Deposition (Document No. 72-1 at 30, 33, 36, 42-43, 49). Against this summary judgment evidence, Trainer and Robbins point to testimony from their depositions that they spent most of their time on non-managerial tasks and that they had no real managerial authority.

Genuine issues of material fact exist on prong two of the executive exemption as it relates to Robbins. Robbins testified at his deposition about how his job as a operations manager at the North Richland Hills Academy store saw him working, approximately 70% of his time, as a cashier. Robbins testified that over the two to three months he worked at the store, from April to June 2016, he did not have any substantive managerial responsibilities, and he either did not have the authority or did not know he had the authority to: hire employees, set their rate of pay, directly or independently discipline employees, or directly or independently devise or alter employees' work schedules. While Robbins admitted during his deposition that he was "responsible for the overall running of the store," he spent most of his time (60-70%) on the "register," ringing up sales. He described that task, and the amount of time he spent doing it as follows:

> Q:   And what were your responsibilities in regards to the store's operations?
>
> A:   It was very vague. I never really got the full scope of my responsibilities. The vast majority of the time that could have been spent training me on the Academy way, I spent ringing customers up at the front register.

10

Q: Okay. What were – what was your understanding of what he – your responsibilities were in regard to the store's operations?

\* \* \*

A: That I would be responsible for the overall operation, for lack of a better term, of the front end, as well as any onboard hiring, firing, policy enforcement, corrective action, things that an operations manager should do to make sure the store runs smoothly, and again, that should extend into every department.

Q: Okay. And I understand from your answer that that didn't line up with what the reality was in your store?

A: Right.

Q: And so my question is not what you believe the position should have entailed, but what it did entail in regards to the store's operations.

A: My position entailed, as I did it in real time, I rang up customers.

Q: And --

A: The vast majority of my time was spent on the service desk ringing up customers.

Q: So you worked the customer service desk the vast majority of your time?

A: Right.

\* \* \*

Q: Okay. So Mr. Robbins, you testified that the majority of your time was spent at the customer service counter?

A: That's correct.

Q: Performing customer service tasks?

A; That's correct.

Q: Okay. What percentage of your time would you spend doing that?

A: 70-plus percent of my time at the store was on that customer service desk

11

ringing up customers or doing that type of interaction with customers.

(Document No. 72-1 at 33-34, 51). He also testified that he performed the cashiering and other customer service tasks, and not real managerial tasks, because Academy's focus, and the focus of his department, was on customer service. In response to a question about how his department was evaluated by Academy, Robbins explained how everything was focused on customer service:

> Q: Were there – were there department-wide goals in your department, department goals of profitability or goals of other metrics or goals that were set for your department, or that you set?
>
> A: No, not really. That's one of the things that I noticed when I was there, is profitability and the sales of the product really wasn't at the forefront of importance. It was all about customer service. Sales was not a focus, to the point where I was told one time that, don't bother.
>
> Q: Don't bother with sales?
>
> A: I was – coming from a sales background, you've seen my resume, you know my history. I've got a long list of sales in my background. I was walking the floor one day and just interacting with customers and just trying to build that basket, as we say in retail, and was told by a director, what are you doing, I'm just kind of walking around trying to help out customers, no, don't bother, we're going to have 500 people walk in today. So I was pushed back up to the register to ring customers up.

(Document No. 72-1 at 37).

Robbins' deposition testimony, when viewed alongside of the deposition testimony of Kelly Pontigo, raises a genuine issue of material fact on what Robbins' primary duty was during the two to three months he was employed by Academy. While Pontigo testified at her deposition that Robbins' primary duty was "management," Robbins testified that the primary duty he performed, and the primary duty focus communicated to him by his Store Director, was "customer service." In the operations "department" that, according to Robbins, necessitated that he spend the "vast majority" of his time ringing up sales. Because there are genuine issues of material fact on what

Robbins' primary duty was and whether that primary duty was managerial in nature, Academy is not entitled to summary judgment on Robbins' claims based on its executive exemption defense.

As for the executive exemption defense as it relates to Trainer, neither Trainer's deposition testimony, nor any of the other summary judgment evidence pointed to by Trainer raises a genuine issue of material fact for trial on any of the four prongs of that defense. First, as set forth above, there is no dispute that Trainer was paid more that $455 a week. Second, there is no genuine dispute on prong three – that Trainer customarily and regularly directed the work of two or more other employees. Trainer testified at his deposition that there were 10 to 15 employees in the logistics department, the associates in his department reported to the team leads, the team leads reported to the senior team lead, and the senior team lead reported to him. (Document No. 66-1 at 25, 41). Trainer also testified that he was "responsible for supervising the employees in the logistics department to ensure that they were performing the tasks that they were supposed to perform," and directed members of his team on constructing the planograms that came from the corporate office (Document No. 66-1 at 48, 53). Third, there is no summary judgment evidence that raises a genuine issue of material fact on prong four – that Trainer either had the "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight." Trainer testified at his deposition that he reviewed job applications, conducted interviews, made hiring recommendations to the Store Director, and, upon the Store Director's assent, made employment offers to prospective employees for his department. Trainer Deposition (Document No. 66-1 at 28-30). That leaves prong two, and a consideration of whether the summary judgment evidence raises a genuine issue of material fact on whether Trainer's primary duty was management of the enterprise

13

or a customarily recognized department or subdivision thereof.

Trainer's deposition testimony differs in nature and substance from that of Robbins. While Trainer did testify at his deposition that customer service was of preeminent importance to Academy (Document No. 66-1 at 43, 49), there is no summary judgment evidence from Trainer to link that focus to any particular non-managerial tasks he performed as a logistics manager. Trainer testified that he put together planograms, swept floors, moved stock, straightened footwear and end cap areas, and folded clothes (Document No. 66-1 at 56), but he also admitted that he was the "closing manager" for the store where he worked about 60% of the time (Document No. 66-1 at 55-56). As closing manager, he was responsible for everything in the store,[1] including the 30-40 employees who were generally working in the store at closing time (Document No. 66-1 at 51). Trainer also testified that he conducted the training of the employees on his team, understood that part of his job would be to conduct "yearly evaluations of the employees in [his] department," and modified or adjusted the work schedules of those on his team "based on when the trucks were coming in." (Document No. 66-1 at 40, 24, 45). That testimony, even when all inferences are taken in Trainer's favor, is that he was performing managerial duties a significant amount of his time. In addition, unlike the testimony of Robbins that he was working as a cashier approximately 70% of his time, and had no managerial authority at the store in which he worked for the two to three month period of time he was employed by Academy, Trainer's testimony is that he did have managerial authority, and that he used that managerial authority – particularly during the significant amount of time he worked as

---

[1] Trainer testified that as the manager on duty and the only manager in the store he was responsible for overrides, making sure there were enough people at the front end, ensuring that products were appropriately set up and merchandised throughout the store, resolving customer concerns, employee safety, customer safety, operational excellence, and profitability of the store. Trainer Deposition (Document No. 66-1 at 57).

the closing manager. Moreover, while Robbins was explicit about the non-managerial task that took up a vast majority of his time (cashier), Trainer did not quantify the type or nature of the "manual tasks" he claims to have undertaken up to 50% of his time. Therefore, his deposition testimony about his seven to eight months of work at the Academy store in Gainesville, Georgia does not controvert the deposition testimony of Kelly Pontigo that Trainer's primary duty as a logistics manager was management of his department and the entire store. Upon this summary judgment record, where Trainer's summary judgment evidence does not controvert Academy's summary judgment evidence on prong two of the executive exemption, Academy is entitled to summary judgment on Trainer's claim based on its executive exemption defense.

The determinations made herein – that Academy is entitled to summary judgment on Trainer's claim, but not Robbins' claim – may seem inconsistent. It may also prove problematic for the class certification issues that were recently addressed. But, the summary judgment evidence in the record simply does not raise a genuine issue of material fact on the executive exemption as it relates to Trainer, but it does as it relates to Robbins. That may be, in part, because of the different store locations at which Robbins and Trainer worked. It may also be attributable to the very short period of time Robbins worked for Academy. Nonetheless, the summary judgment evidence in the record, as it relates to Robbins, raises a genuine issue of material fact on whether Robbins' primary duty, as an operations manager at the Academy store in North Richland Hills, Texas, from April to June 2016, was "management" of either the North Richland Hills store or a "customarily recognized department or subdivision thereof".

15

## IV. Conclusion and Recommendation

Based on the foregoing, and the conclusion that genuine issues of material fact exist on the executive exemption claimed by Academy as it relates to Plaintiff Rusty Robbins, but that no genuine issue of material fact exists on the executive exemption as it relates to Dustin Trainer, the Magistrate Judge

RECOMMENDS that Defendant Academy, Ltd.'s Motion for Summary Judgment on Plaintiff Dustin Trainer's Claims (Document No. 66) be GRANTED, and Defendant Academy, Ltd.'s Motion for Summary Judgment on Plaintiff Rusty Robbins's Claims (Document No. 72) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); Ware v. King, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 30th day of August, 2019

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

16