IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLAN LASLEY, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-347 |
| | § § | |
| ACADEMY LTD; dba ACADEMY SPORTS & OUTDOORS; ca KKR & CO LP; ca ASSOCIATED INVESTORS LLC; ca ACADEMY MANAGING CO LLC, | § § § § § § | |
| Defendants. | § § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendant Academy, Ltd.'s Motion for Summary Judgment against Plaintiff Dustin Trainer (Doc. No. 66), and Motion for Summary Judgment against Plaintiff Rusty Robbins (Doc. No. 72); the various responses and replies associates with both motions (Doc. Nos. 109, 111, 116, and 117); Magistrate Judge Stacy's Memorandum and Recommendation that the Court grant summary judgment as to Trainer, but to deny it as to Robbins (Doc. No. 121); Trainer's and Defendant's Objections to the Memorandum and Recommendation (Doc. Nos. 123, 124); and Defendant's and Robbins' Responses to the Objections (Doc. Nos. 126, 127). After reviewing, *de novo*, the case, the Magistrate Judge's Memorandum and Recommendation, and the issues raised by both parties' objections, the Court hereby **ADOPTS** the Memorandum and Recommendation.

Without recounting in detail, the evidence which the Magistrate Judge painstakingly reviewed, the Court writes to emphasize the evidence supporting summary judgment on the primary duty requirement of the executive exemption's second prong. *See* 29 C.F.R. § 541.100(a)(2). It states: "The term 'employee employed in a bona fide executive

capacity' . . . shall mean any employee . . . (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof . . . ." *Id.* Trainer admitted he was the "closing manager" for his store 60% of the time (Doc. No. 66, Ex. A at 55–56; *see also* Doc. No. 111, Ex. A at 60). When he was the closing manager, he was the only manager on the premises (Doc. No. 66, Ex. A at 55). Trainer also testified that "at least 25 percent of the time that [he] was not closing" he was the manager on duty (Doc. No. 66, Ex. A at 56; Doc No. 111, Ex. A at 60).[1] Thus, for at least 70% of his time at work Trainer "was responsible for everything that happens in the store as the manager on duty . . . ." (Doc. No. 66, Ex. A at 56).[2] Indeed, the Magistrate Judge accurately identified eight managerial tasks that Trainer was responsible for as the manager on duty (Doc. No. 121 at 14 n.1; *see also* Doc. No. 66, Ex. A at 56–57).

Trainer objects to the Memorandum and Recommendation and argues, among other things, that a fact issue exists on the primary duty element (Doc. No. 123 at 9-16). In particular, he points to his deposition where he said, "85 to 90 percent of my day was spent doing customer service, various tasks throughout the store." (Doc. No. 111, Ex. A at 27). Trainer also stated "[m]ost of the workday [he] was doing customer service or other nonmanagement tasks," such as being a cashier, folding clothes, sweeping the floor, assisting customers, unloading the freight truck, and setting up planograms. *Id.* at 28, 45, 59.

Taking all inferences in Trainer's favor, as is necessary at the summary judgment stage, the Court does not find that he raised a genuine issue of material fact as to the primary duty element. First of all, the uncontroverted evidence establishes that performing customer service

---

[1] Trainer was also the manager on duty when he was the closing manager (Doc. No. 111, Ex. A at 44).
[2] The 70% figure assumes that when Trainer said he was the closing manager 25% of the time he was not closing, he meant 25% of the 40% he was not the closing manager. If he meant 25% of his entire time at work, however, then the 70% figure would be 85%.

duties at a retail establishment, like Academy, is of extreme importace and that all of the employees were working toward that goal.³ Even assuming that Trainer spent up to 90% of his day performing non-managerial tasks, the evidence shows that he was simultaneously executing his management duties. Concurrent performance of exempt and nonexempt work does not disqualify an employee under the executive exemption. 29 C.F.R. § 541.106(a). This is because "exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work." *Id.* The regulations even specify that "assistant manager[s] in a retail establishment may perform work such as serving customers . . . stocking shelves and cleaning the establishment," and have his or her primary duty be management. *Id.* § 541.106(b). To be sure, an "assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves." *Id.*

The concurrent duties regulations accurately describe Trainer's job as described by the evidence. As discussed, during the times he was manager on duty he was "responsible for everything that happens in the store." (Doc. No. 66, Ex. A at 56). Thus, even when he was assisting customers, cleaning, and stocking shelves, Trainer was also tasked with ensuring the function and operation of the store (Doc. No. 66, Ex. A at 56–57, 64), supervising employees (*id.* at 51), and fostering a safe environment (*id.* at 43, 50, 52, 65). Further, Trainer chose to perform the nonexempt tasks. *Id.* at 59; *see also* Doc. No. 111, Ex. A at 48. So even if Trainer spent 90% of his time doing non-exempt work, it was his decision to not exercise his undisputed discretion to delegate to other employees. *See* C.F.R. § 541.106(a) ("[E]xempt executives make the decision

---

³ Trainer also worked at an Academy store that opened to the public for the first time less than two weeks before Thanksgiving, being one of the biggest times of the year for retail establishments (*see* Doc. No. 66, Ex. A at 39).

regarding when to perform nonexempt duties . . . ."); *see also Stein v. J.C. Penney Co.*, 557 F. Supp. 398, 405 (W.D. Tenn. 1983).

Moreover, even though "a good rule of thumb [is] that primary duty means the major part, or over 50 percent of the employee's time[,]" other factors must be considered. *Vela v. City of Hous.*, 276 F.3d 659, 677 (5th Cir. 2001). Specifically, the additional factors are: (1) the relative importance of the exempt duties as compared with other types of duties; (2) the employee's relative freedom from direct supervision; and (3) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a); *see also Saunders v. Lincoln Mfg., Inc.*, No. H-18-1746, 2019 WL 1601875, at *9 (S.D. Tex. Apr. 15, 2019). Trainer failed to raise a factual issue that his nonexempt work was more important than the 70% of the time he was responsible for the overall management of the store. In addition, even if he "was micromanaged from the top down" by the store director and his policies (Doc. No. 111, Ex. A at 56), Trainer could not be directly or closely supervised because he was the only manager in the store approximately 60% of the time.

Lastly, Trainer's compensation significantly exceeded that of nonexempt employees. Trainer worked for Defendant from June 12, 2015 to December 11, 2015 (Doc. No. 111, Ex. A at 3). His annual salary was $50,000. *Id.* at 9. Before the store opened around November 13, 2015 (*see* Doc. No. 66, Ex. A at 39), Trainer worked approximately 40 hours each week. *Id.* at 59. After the store opened, Trainer says his weekly hours were closer to 60. *Id.* at 60. Thus, his effective hourly rate exceeded $22.[4] That is $4 more than the highest paid hourly employee in the

---

[4] Trainer worked 40 hours a week for 22 weeks for a total of 880 hours. He also worked 240 hours in his last four weeks. Accordingly, on average he worked 43.08 hours a week. Trainer's $50,000 salary amortized over a year results in $961.53 a week. Therefore, during his six-month employment with Defendant, Trainer was paid approximately $22.32 per hour.

Logistics Department (Doc. No. 66, Ex. B at 2–3). Trainer has not established a genuine issue of material fact as to whether his primary duty was management.

The Court also finds no error with respect to the Magistrate Judge's Order recommending that Defendant's Motion against Robbins be denied. The Court can not say as a matter of law that no fact issues exists as to him.

Accordingly, the Court hereby **ORDERS** that Trainer's Objections (Doc. No. 123) and Defendant's Objections (Doc. No. 124) are **OVERRULED**; the Memorandum and Recommendation (Doc. No. 121) is **ADOPTED**; Defendant's Motion for Summary Judgment against Plaintiff Dustin Trainer (Doc. No. 66) is **GRANTED**, and Defendant's Motion for Summary Judgment against Plaintiff Rusty Robbins (Doc. No. 72) is **DENIED**.

Signed at Houston, Texas, this 27th day of September, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE