**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| RUSTY ROBBINS and | § | |
| DUSTIN TRAINER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00347 |
| | § | |
| ACADEMY, LTD d/b/a ACADEMY | § | |
| SPORTS + OUTDOORS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT ACADEMY, LTD.'S MOTION FOR RECONSIDERATION**
**OF ORDER GRANTING PLAINTIFFS' MOTION TO CONDITIONALLY**
**<u>CERTIFY COLLECTIVE ACTION</u>**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. SBC Commc'ns, Inc.*,
  No. H-05-3198, 2006 WL 964554 (S.D. Tex. Apr. 11, 2006)............................................4, 11

*Aguirre v. SBC Commc'ns, Inc.*,
  No. H-05-3198, 2007 WL 772756 (S.D. Tex. Mar. 12, 2007) ...................................5, 6, 8, 11

*Andel v. Patterson-UTI Drilling Co.*,
  280 F.R.D. 287 (S.D. Tex. 2012)........................................................................................7, 9

*Blake v. Hewlett-Packard Co.*,
  No. 4:11-CV-592, 2013 WL 3753965 (S.D. Tex. July 11, 2013) .................................. *passim*

*Brown v. Barnes & Noble, Inc.*,
  No. 1:16-CV-07333-RA-KHP, 2018 WL 3105068 (S.D.N.Y. June 25, 2018).....................11

*Henderson v. Woodgrain Millwork, Inc.*,
  No. 4:16-CV-1761, 2018 WL 2321953 (S.D. Tex. Feb. 7, 2018) ...........................................6

*Johnson v. Big Lots Stores, Inc.*,
  561 F. Supp. 2d 567 (E.D. La. 2008).......................................................................3, 9, 10, 11

*In re JP Morgan Chase & Co.*,
  916 F.3d 494 (5th Cir. 2019) .................................................................................................4

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.N.J. 1987)............................................................................................4, 6

*Marshall v. Eyemasters of Tex., Ltd.*,
  272 F.R.D. 447 (N.D. Tex. 2011) .........................................................................................11

*Nieddu v. Lifetime Fitness, Inc.*,
  977 F. Supp. 2d 686 (S.D. Tex. 2013) ....................................................................................5

*Reyes v. Tex. Ezpawn, L.P.*,
  No. V-03-128, 2007 WL 101808 (S.D. Tex. Jan. 8, 2007).........................................5, 7, 9, 11

*Richardson v. Byrd*,
  709 F.2d 1016 (5th Cir. 1983) ...............................................................................................3

i

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS....................1

II.   STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ............................1

III.  SUMMARY OF THE ARGUMENT ................................................................................2

IV.  LEGAL STANDARD .....................................................................................................3

V.    ARGUMENT ...................................................................................................................6

VI.  CONCLUSION...............................................................................................................12

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION TO
CONDITIONALLY CERTIFY COLLECTIVE ACTION

Defendant Academy, Ltd. d/b/a Academy Sports + Outdoors ("Academy") hereby files this motion for reconsideration of the Court's August 30, 2019 order [ECF No. 120] granting Plaintiffs' Motion to Conditionally Certify Collective Action and to Approve and Facilitate Notice to Similarly Situated Employees [ECF No. 69].

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On August 30, 2019, the Court entered an order conditionally certifying a class of all current and former Store Managers employed by Academy at any time from April 19, 2016 through the entry of final judgment in this case but staying the issuance of notice until November 22, 2019 or further ruling from the Court.  *See* ECF No. 120.  In that order, the Court granted Academy leave to file a motion for reconsideration with regard to the notification process if the Court granted Academy's motions for summary judgment before November 22, 2019.  ECF No. 120.

On August 30, 2019, the Magistrate Judge entered a Memorandum and Recommendation recommending that Academy's motion for summary judgment on Trainer's claims be granted and that Academy's motion for summary judgment on Robbins's claims be denied.  *See* ECF No. 121. In the Memorandum and Recommendation, the Magistrate Judge recognized that the divergent result "may also prove problematic for the class certification issues that were recently addressed." *See* ECF No. 121 at 15.  On September 27, 2019, the Court entered an order adopting the August 30, 2019 Memorandum and Recommendation, granting Academy's motion for summary judgment on Trainer's claims, and denying Academy's motion for summary judgment on Robbins's claims. *See* ECF No. 128.  At this time, notice has not issued to putative class members.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

The issue presented is whether, in light of the Court's recent order granting Academy's summary judgment motion on Trainer's claims but denying Academy's summary judgment motion

1

on Robbins's claims, the Court should reconsider its August 30, 2019 order approving the issuance of collective action notice [ECF No. 120] and deny Plaintiffs' motion for conditional certification [ECF No. 69] because the putative class members are not similarly situated.

### III.    SUMMARY OF THE ARGUMENT

The Court should reconsider its order granting Plaintiffs' motion for conditional certification and should now deny the motion.  Under Section 216(b) of the Fair Labor Standards Act ("FLSA"), a case may proceed as a collective action only where the court finds that the named plaintiffs and the putative class members are "similarly situated" with respect to issues relevant to claims and defenses in the complaint.  In this case, the core legal question is whether Academy properly classified its Store Managers as exempt from overtime compensation pursuant to the FLSA's executive exemption.  Where notice is sought early in a case, courts typically utilize a "lenient" standard for evaluating the propriety of notice to potential class members, often ordering notice on little more than well-pled allegations and a few declarations.  Once discovery has occurred, however, courts use a more exacting standard for ensuring that the case may proceed to a merits judgment as a collective action.  Regardless of the certification standard applied, and regardless of the stage of the case, the Court must satisfy itself that facts common to the putative class will yield common answers to common questions.  Where the record demonstrates that individualized inquiries are necessary, *i.e.*, where there is no common or representative proof that can be used to answer common legal questions for the class as a whole, a case may not proceed as a collective action.  That is the situation here and why notice may not issue.

The Court's order on Academy's summary judgment motions demonstrates that the named plaintiffs are not even similarly situated *with each other*, never mind with the hundreds of other current and former Store Managers Plaintiffs would seek to have join this case.  The Court's

determination that Trainer is exempt, but that genuine issues of material fact exist as to Robbins, means that the Court will necessarily need to consider facts and circumstances unique to each and every Store Manager who joins this case to determine whether he or she is exempt under the FLSA's executive exemption.  The Magistrate Judge observed that the difference between Trainer and Robbins might have been the result of practices at different stores, or possibly due to Robbins's short tenure.  Whatever the case, the fact that the Court was capable of reaching different results for the two hand-selected named plaintiffs considered on summary judgment shows unequivocally that there is no common evidence or proof that would allow the Court to reach a result as to all putative class members without the need for hundreds of mini-trials.

Plaintiffs will likely argue that the Court should allow for notice to issue so that a class can form, and then it can make the determination down the road whether the case can proceed to trial in a collective fashion.  However, the Court's summary judgment decision shows *now*, without the need for further proceedings, that it cannot employ this approach.  The Court's determination is a prime example of necessary individualized fact inquiries yielding uncommon answers to common questions.  Collective notice is simply inappropriate and unjustifiable under these circumstances. Indeed, allowing notice at this point—when it has already been shown that the named plaintiffs themselves are not similarly situated—would be not just a pointless exercise, but an extraordinary waste of judicial and party resources.  Accordingly, the Court should deny Plaintiffs' motion for conditional certification and dismiss the opt-in plaintiffs' claims without prejudice.

## IV.    LEGAL STANDARD

A district court is "charged with the duty of monitoring its class decisions in light of the evidentiary development of the case." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983); *see also Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 571-72 (E.D. La. 2008) (stating

3

courts have an "ongoing obligation to monitor the propriety of certification in light of factual developments"). In the context of the FLSA, the threshold issue to certifying a collective action is whether the members of the putative class are similarly situated. *See Blake v. Hewlett-Packard Co.*, No. 4:11-CV-592, 2013 WL 3753965, at *2 (S.D. Tex. July 11, 2013). If it becomes clear through the development of the factual record that a common analysis based on representative proof cannot be applied to all members of the putative class at the merits stage, a class should not be certified because "there would be no efficiency in-and, therefore, no justification for-collective adjudication." *Blake*, 2013 WL 3753965, at *5, *12 ("The bottom line is that 'the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits . . . .'" (quoting *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003))).

Most courts employ the two-stage "*Lusardi*" method when determining whether to certify a class, based on the decision in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See In re JP Morgan Chase & Co.*, 916 F.3d 494, 500 n.9 (5th Cir. 2019). When evaluating whether to employ the first stage of the *Lusardi* analysis or the more stringent second stage, courts look at the extent to which the factual record has been developed. "The first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals still exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2006 WL 964554, at *4-6 (S.D. Tex. Apr. 11, 2006) [hereinafter *Aguirre I*]. The second stage of the *Lusardi* analysis typically occurs when discovery is largely complete and the defendant moves to decertify the

4

conditionally certified class. *Id.* at *5.  At this stage, "the court draws on the expanded record and makes a factual determination" as to whether the putative class members are similarly situated. *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-3198, 2007 WL 772756, at *9 (S.D. Tex. Mar. 12, 2007) [hereinafter *Aguirre II*].

At the second stage, courts generally consider: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  *Reyes v. Tex. Ezpawn, L.P.*, No. V-03-128, 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007).  If the court finds that the putative class members are similarly situated, the collective action may proceed. *Aguirre II*, 2007 WL 772756, at *9.  If not, "the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims."  *Id.*

Where some (rather than extensive) discovery has occurred, some courts have used an "intermediate approach": following the two-stage process, but "imposing a heightened evidentiary standard commensurate with the opportunity to conduct discovery."  *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 692-93 (S.D. Tex. 2013); *see also Blake*, 2013 WL 3753965, at *4-5. However, when the factual record has been substantially developed, as is the case here,[1] several

---

[1] This case, which has been pending for almost two years, has proceeded well beyond the pleadings stage.  The deadline for the parties to conduct discovery on certification issues expired on January 25, 2019, and the parties did, in fact, conduct significant discovery on not only the certification issues but also the named plaintiffs' claims (including written discovery, thousands of pages of document production by Academy, depositions of three corporate representatives from Academy, depositions of Dustin Trainer, Rusty Robbins, Russ Hilsher (Trainer's former Store Director), Andrew Lovingood (Trainer's former Senior Team Lead), Chris Kuykendall (Robbins's former Store Director), and Whitney Smith (Robbins's former Senior Team Lead), and the Court, in allowing additional time to conduct discovery on the named plaintiffs' claims, has already developed an extensive factual record and addressed summary judgment motions on the named plaintiffs' claims.

courts have concluded that "the court may bypass the first stage and proceed directly to the second stage of the certification analysis." *Aguirre II*, 2007 WL 772756, at *9 (collecting cases); *see also, e.g.*, *Henderson v. Woodgrain Millwork, Inc.*, No. 4:16-CV-1761, 2018 WL 2321953, at *2 (S.D. Tex. Feb. 7, 2018) ("However, discovery in this case has been ongoing for over a year, and it is not appropriate to apply the lenient first stage *Lusardi* standard at this point.").

## V.     ARGUMENT

The Court should reconsider its August 30, 2019 order and deny conditional certification in this matter because the Court's recent summary judgment order and the evidence in the record demonstrate that the putative class members are not similarly situated.[2]

"Because '[t]he determination of whether an exemption applies to a given individual . . . is a very fact-specific exercise,' . . . a common exemption analysis can be applied to a group of individuals only if evidence of the dispositive facts can be applied to all such individuals." *Blake*, 2013 WL 3753965, at *8 (quoting *Tuminello v. United States*, 14 Cl. Ct. 693, 697 (1988)). "In misclassification cases, the dispositive facts are those that define an employee's primary duties." *Id.* (citing 29 C.F.R. § 541.700). "Therefore, for the purpose of certifying a collective action, a critical question is whether there is sufficient similarity of job duties to allow collective determination of exemption status." *Id.* Employees are not similarly situated "if their day-to-day job duties vary substantially." *Aguirre II*, 2007 WL 772756, at *12.

---

[2] Regardless of the certification standard applied, Plaintiffs' motion for conditional certification should be denied because even the most lenient standard requires a showing that the putative class members are similarly situated to the named plaintiffs, and Plaintiffs undeniably cannot make this showing.

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION TO
CONDITIONALLY CERTIFY COLLECTIVE ACTION

The Court's recent summary judgment decisions highlight the dissimilarities among the putative class members that render this matter inappropriate for collective adjudication. *See Blake*, 2013 WL 3753965, at *11 (stating that if a class "definition includes both exempt and nonexempt employees, then the members of the putative class cannot be similarly situated"). The fact that the Court found that Trainer is exempt but that genuine issues of material fact exist on whether Robbins's primary duty was management shows, without question, that there are *not* common issues of fact or common proof applicable to all Store Managers. As the Magistrate Judge observed, the dissimilarities between the named plaintiffs may be "because of the different store locations at which Robbins and Trainer worked. It may also be attributable to the very short period of time Robbins worked for Academy." ECF No. 121 at 15; *cf. Reyes*, 2007 WL 101808, at *4 ("However, the evidence clearly establishes that ASMs' job duties varied from store to store depending on the management style of their superiors and store demographics. . . . Although the ASMs held the same job title, this fact alone does not necessarily mean they performed the same work." (citations omitted)). Whatever the reason, the fact that the Court can reach different results for the two named plaintiffs demonstrates that not even those two individuals are similarly situated, and that each Store Manager's job duties would need to be analyzed individually, and not collectively, to determine whether they meet the requirements of the exemption. *See Andel v. Patterson-UTI Drilling Co.*, 280 F.R.D. 287, 289 (S.D. Tex. 2012) (denying conditional certification of class of welders classified as independent contractors rather than employees and stating "because the named Plaintiffs could not clearly be deemed FLSA employees without significant individualized analysis, then neither could the putative plaintiffs"). Indeed, the

Magistrate Judge specifically recognized that collective certification may "prove problematic" given the dissimilarities between the two named plaintiffs.  ECF No. 121 at 15.

This is far from a hypothetical problem.  If Plaintiffs were correct that Trainer and Robbins are similarly situated with each other and with all potential class members, the Court would have been able to decide whether the executive exemption applied to Trainer by considering Robbins's evidence, or vice versa.  In other words, proof as to one would have been interchangeable with that of other plaintiffs for the purposes of deciding the case.  The Memorandum and Recommendation and the Court's order endorsing it show that that is not the situation here and the Court believes that a trial is, in fact, required to decide disputes as to Robbins.  Such a trial will necessarily require proof specific to Robbins, as the Court has already concluded that facts as to Trainer do not control the outcome as to Robbins.

With the Court having concluded that one unique, plaintiff-specific trial should take place after having considered the case as to just *two* individuals, it takes little imagination to see how adding hundreds of additional plaintiffs to a collective action would turn this case into an unmanageable exercise involving *hundreds* of individual litigations.  As the summary judgment orders demonstrate, because the Store Managers' claims are not amenable to generalized evidence, the parties will be required to present documentary evidence and witnesses specific to each individual who elects to join the case, so that each person's employment experiences and duties and responsibilities can be assessed.  As with Trainer and Robbins, individual summary judgment motions will be required on each opt-in plaintiff.  Where the Court concludes that an opt-in plaintiff looks more like Robbins than like Trainer, the Court will be required to hold a plaintiff-specific trial to resolve the individualized fact disputes to reach a decision on the merits.  *See Aguirre II*,

2007 WL 772756, at *12 ("This is not a case in which the plaintiffs rely on a job description to support certification as a collective action. Instead, the plaintiffs are arguing that as a matter of fact, rather than of formal job description, they perform nonmanagerial duties for the majority of their working hours. This requires an analysis of each employee's job responsibilities under the relevant exemption criteria."). This would involve literally thousands of potential witnesses, who would be called to testify to the circumstances and work experiences of each of the individuals who may opt into this case. Even with just the 36 individuals who have opted into the case, five to six witnesses per individual (as was the case with Trainer and Robbins) translates into hundreds of depositions and fact assessments the Court must make.[3] This defeats the purpose of collective action treatment. *See Andel*, 280 F.R.D. at 290 (stating that conducting an individualized analysis of each putative plaintiff "would contravene a primary purpose behind class action lawsuits, *i.e.*, the promotion of judicial economy"); *Reyes*, 2007 WL 101808, at *6 ("In light of the individual analysis each Plaintiff's claim will require, the judicial inefficiency of having essentially forty plus mini-trials clearly outweighs any potential benefits in proceeding as a collective action.").

The hazards to the Court and the parties, and the potential for the tremendous waste of judicial resources, that would accompany the issuance of notice in a case like this when individualized inquiries are so clearly necessary is borne out in *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008). In *Johnson*, the court decertified a collective action of 936 current and former Big Lots assistant store managers *after* a bench trial. 561 F. Supp. 2d at 568-

---

[3] For Trainer, Plaintiffs deposed Russ Hilsher and Andrew Lovingood, and Academy deposed Trainer and submitted declarations by Andrew Lovingood, David Graham, Matthew Brooks, and James Morrison. For Robbins, Plaintiffs deposed Chris Kuykendall and Whitney Smith, and Academy deposed Robbins and submitted declarations by Whitney Smith, Travis Smith, and Kanetha Smith.

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION

70.   Over the course of seven days, the court heard 43 hours of live trial testimony and presentations from counsel, with each side calling a full complement of 20 non-expert witnesses.  *Id.* at 570. The parties also offered expert testimony and submitted more than a thousand exhibits.  *Id.*  At the close of the live portion of trial, Big Lots moved for judgment as a matter of law or, in the alternative, for the court to decertify the collective action.  *Id.* at 570-71.  With the fuller evidentiary record before it, the court again confronted the "vexing question of whether the opt-in-plaintiffs are sufficiently similar such that adjudication of their claims based on representative proof may be done in a manner that respects the rights of both parties."  *Id.* at 571.  The court found that the evidence of the opt-in plaintiffs' job experiences revealed substantial variations among the opt-in plaintiffs that rendered the matter unfit for collective adjudication:

> At a high level of generality opt-in plaintiffs' job duties may be similar in that they are subject to a uniform job description, are required to run individual stores according to corporate policies, and are supervised by store managers.  But in terms of individual job duties, the evidence shows that the opt-in plaintiffs have different responsibilities from one another and that individuals themselves will have different duties from day-to-day and within a single day.  Such diversity in individual employment situations inhibits Big Lots from proving its statutory exemption defense as to all 936 opt-in plaintiffs on the basis of representative proof. And, because the plaintiffs are dissimilar, the Court cannot confidently adjudicate plaintiffs' claims or Big Lots' defense on the merits.

*Id.* at 578-79.  After considering the full record, the court reached the "inescapable conclusion that the all or nothing posture of this case makes ruling on the merits fundamentally unfair to both sides."  *Id.* at 588.  The court observed:

> Were the Court to rule in plaintiffs' favor, it would have to do so on the basis of proof that is not representative of the whole class, and the verdict would result in liability on the defendant in a magnitude that is not likely to be warranted in reality. The testimony of the opt-in plaintiffs and their survey responses show that, in contrast to the evidence presented in the earlier stages of this litigation, there is significant diversity among plaintiffs in terms of their job experiences.
> . . .

> On the other hand, were the Court to find that on the whole Big Lots proved its defense, then all of plaintiffs' claims would be extinguished.

*Id.* As a result, the court decertified the action, "regret[fully]," "after the large investment of resources by the parties." *Id.* at 587.

*Johnson* is strikingly similar to what is presented in the instant case and provides a compelling lesson of the dangers of allowing the issuance of notice when the current record shows that the plaintiffs are not similarly situated. Both this case and *Johnson* involve nationwide putative collective actions of assistant store managers where the plaintiffs contend that they spent the vast majority of their time completing nonexempt tasks. In *Johnson*, it took a full trial—and probably thousands of hours of legal work and millions of dollars in fees—for the court in that case to discover what is now clear from the record in this one: (1) the named plaintiffs and putative class members are not similarly situated; (2) individualized inquiries are necessary; and (3) the Court cannot rely on representative evidence when evaluating the applicability of the executive exemption.

*Johnson* is far from the only case denying collective action treatment in situations like the one presented here. Several courts "have refused to certify a class, even conditionally, when determining whether the employer improperly treated the plaintiffs as nonexempt would require a highly individualized, fact-intensive inquiry." *Aguirre I*, 2006 WL 964554, at *7 (collecting cases); *see also, e.g.*, *Brown v. Barnes & Noble, Inc.*, No. 1:16-CV-07333-RA-KHP, 2018 WL 3105068, at *14-16, *19 (S.D.N.Y. June 25, 2018) (denying conditional certification of class of café managers where plaintiffs' own testimony showed variances in the extent to which they each performed managerial duties); *Blake*, 2013 WL 3753965, at *9, *12 (denying conditional certification of nationwide class of IT Support Specialists where there was no "factual showing

11

that the putative class members performed duties sufficiently similar to allow a common exemption analysis"); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 450 (N.D. Tex. 2011) (denying conditional certification where competing declarations showed that employees holding the same job title were performing different duties at different stores, indicating that individual fact-finding would be necessary to determine if FLSA violations occurred); *Reyes*, 2007 WL 101808, at \*2-4, \*7 (granting employer's motion to decertify statewide class of assistant store managers at pawn shops where plaintiffs' deposition testimony revealed significant differences in each assistant store manager's job duties, discretion, and authority, depending on the practices of individual store managers, store demographics, and location); *Aguirre II*, 2007 WL 772756, at \*14-15 (collecting cases).

Because the present record shows that there are significant differences in the employment experiences of the two Store Managers the Court has considered that preclude a common exemption analysis, upon reconsideration, the Court should deny Plaintiffs' motion for conditional certification and dismiss the opt-in plaintiffs' claims without prejudice. "Otherwise, the result is too likely to be the conditional certification of a large nationwide class, followed by extensive discovery and, after an inefficient expenditure of resources, decertification." *Blake*, 2013 WL 3753965, at \*12.

## VI.    CONCLUSION

For the foregoing reasons, Academy respectfully requests that the Court grant its motion for reconsideration, deny Plaintiffs' motion for conditional certification, dismiss the opt-in plaintiffs' claims without prejudice, and award Academy all other relief to which it may be entitled.

Respectfully submitted,

*/s/ Brian G. Patterson*
Brian G. Patterson, Texas Bar No. 24042974
S.D. Tex. Bar No. 909785
bpatterson@akingump.com
Courtney L. Stahl, Texas Bar No. 24088463
S.D. Tex. Bar No. 2192857
cstahl@akingump.com
Telephone: (713) 220-5800
Facsimile: (713) 236-0822
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002

Robert G. Lian, Jr. (D.C. Bar No. 446313)
(Admitted *pro hac vice*)
blian@akingump.com
Telephone: (202) 887-4358
Facsimile: (202) 887-4288
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K St. NW
Washington, DC 20006

COUNSEL FOR DEFENDANT ACADEMY, LTD.
d/b/a ACADEMY SPORTS + OUTDOORS

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION TO
CONDITIONALLY CERTIFY COLLECTIVE ACTION

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system.

> Alan L. Quiles
> aquiles@shavitzlaw.com
> Camar R. Jones
> cjones@shavitzlaw.com
> Gregg I. Shavitz
> gshavitz@shavitzlaw.com
> SHAVITZ LAW GROUP, P.A.
> 951 W. Yamato Road, Suite 285
> Boca Raton, Florida 33431
>
> *Attorneys for Plaintiffs and the Putative Class*

*/s/ Brian G. Patterson*
Brian G. Patterson

*Counsel for Defendant*

DEFENDANT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION